UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CHURCHILL DOWNS RACETRACK, LLC,                                            Plaintiff

v.                                                        Civil Action No. 3:22-cv-386-RGJ

LABORER'S INTERNATIONAL UNION OF                                          Defendant
NORTH AMERICA, LOCAL UNION NO. 576,

* * * * *

**MEMORANDUM OPINION & ORDER**

Plaintiff/Counterclaim Defendant Churchill Downs Racetrack, LLC ("CDRT") moved for

summary judgment. [DE 15].  Defendant/Counterclaim Plaintiff Laborer's International Union of

North America, Local Union No. 576 ("Union") responded [DE 26] and CDRT replied [DE 27].

The Union also moved for summary judgment.  [DE 16].  CDRT responded [DE 25] and the Union

replied [DE 28].  These matters are ripe.  For the reasons below, CDRT's Motion for Summary

Judgment [DE 15] is **DENIED** and the Union's Motion for Summary Judgment [DE 16] is

**GRANTED IN PART as to summary judgment and DENIED IN PART as to its request for**

**attorney's fees**.

**I.      BACKGROUND**

CDRT owns and operates racetracks and other facilities throughout the United States.  [DE

15-1 at 207].  In 2018, CDRT opened Derby City Gaming, which has facilities for both horse

training and wagering. [DE 16-1 at 660].  The Union is the collective bargaining representative of

certain employees at two CDRT locations, including Derby City Gaming, under the Collective

Bargaining Agreement [DE 1-1 ("CBA")].  [DE 15-1 at 208].

1

When Derby City Gaming opened, it elected to subcontract housekeeping and maintenance functions at that facility to a third party. [*Id.*]. On September 19, 2018, the Union filed a grievance alleging that CDRT violated the CBA by subcontracting services rather than using bargaining unit employees at Derby City Gaming. [*Id.*]. The grievance moved to arbitration, where the arbitrator found in favor of the Union. [DE 15-4 ("Merits Award")]. The Merits Award directed the CDRT to assign maintenance and housekeeping jobs at Derby City Gaming to bargaining unit employees. [DE 15-4 at 251]. The Merits Award also provided the following monetary remedy: "[b]argaining unit members who were not offered the opportunity to perform work assigned to employees of C&W Facility Services, shall be made whole for all lost wages and benefits sustained." [*Id.*].

On August 22, 2019, CDRT sought judicial review of the Merits Award before this Court in Case No. 3:19-cv-595-DJH-CHL. [DE 15-1 at 209]. This Court granted the Union's motion for summary judgment and enforced the Merits Award. *See Churchill Downs Racetrack, LLC v. Laborers' Int'l Union of N. Am., Loc. Union No. 576*, No. 3:19-CV-595-DJHCHL, 2020 WL 6946574 (W.D. Ky. Nov. 25, 2020).

CDRT appealed the Court's ruling but dismissed the appeal when the parties reached a settlement [DE 15-5 ("Settlement Agreement")]. [DE 16-1 at 661]. In the Settlement Agreement, the parties agreed that CDRT initially would fill 32 bargaining unit positions at Derby City Gaming. [DE 15-5 at 254]. Current bargaining unit employees would be offered the opportunity to transition to Derby City Gaming. [*Id.* at 255]. The parties did not agree on the dollar amount due under the Merits Award. [*Id.* at 256]. Instead, they "agree[d] to arbitrate the sole issue of the calculation of backpay, as that remedy is referred to and defined in the [Merits Award]." [*Id.*]. Bargaining unit employees could apply for positions at Derby City Gaming by October 2021. [DE 16-1 at 662].

On March 3, 2022, the parties held their second arbitration hearing. [DE 15-1 at 210]. The arbitrator issued the second opinion and award on June 27, 2022. [DE 15-3 ("Remedy Award")]. The arbitrator noted that "the Union did not present evidence of a specific individual who suffered a loss of wages." [*Id.* at 232]. He also explained that "the existence of backpay liability is not presupposed in the terms of the Settlement Agreement." [*Id.* at 232]. However, CDRT ignored the Merits Award by failing to assign the housekeeping and maintenance work at Derby City Gaming to employees in the bargaining unit. [*Id.*]. The arbitrator rejected CDRT's argument that no bargaining unit employee ever applied at Derby City Gaming because CDRT "never made that opportunity available or otherwise sought to assign bargaining unit employees there, as required by the [Merits] Award." [*Id.*].

The arbitrator found that the number of hours worked by the subcontractor's employees at Derby City Gaming provided "a relatively simple and straightforward basis upon which to fashion the remedy." [*Id.* at 235]. The arbitrator also rejected CDRT's argument that calculating backpay this way was equivalent to punitive damages and denied the Union's request for damages related to reputational loss. [*Id.* at 235–36]. The Remedy Award calculated "backpay" as the hours worked by contracted employees at Derby City Gaming multiplied by the applicable rates in the CBA. [*Id.* at 236]. Backpay would run from September 19, 2018 through September 17, 2021. [*Id.*].

On July 27, 2022, CDRT filed this action requesting that the Court vacate the Remedy Award. [DE 1]. On August 22, 2022, the Union filed its Answer and a Counterclaim seeking to enforce the Remedy Award. [DE 9]. The parties agree that this matter is ripe for a decision on summary judgment without discovery. [DE 13].

3

## II.    SUMMARY JUDGMENT

CDRT and the Union both moved for summary judgment.  [DE 15; DE 16].  CDRT contends that the Remedy Award must be vacated because the arbitrator violated the doctrine of *functus officio*, went beyond the questions submitted to him, and awarded punitive damages.  [DE 15].  The Union contends that the Court need not reach CDRT's arguments because the Remedy Award satisfies the standard set forth by the Sixth Circuit.  [DE 16].  Because their motions set forth similar principles, the Court will address them together.

### A.  Summary Judgment Standard

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion.  *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party.  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).  But the nonmoving party must do more than show some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126,

136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"The standard of review for cross-motions [for] summary judgment does not differ from the standard applied when only one party files a motion." *Stevens v. CSX Transp., Inc.*, No. 17-74-HRW, 2018 WL 4686428, at *3 (E.D. Ky. Sept. 28, 2018) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Id.* (quoting *Taft Broad. Co.*, 929 F.2d at 248). "Thus, when the court reviews cross-motions for summary judgment, it 'must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party.'" *Id.* (quoting *Taft Broad. Co.*, 929 F.2d at 248).

### B. Standard for Arbitration Award

"Federal labor arbitration case law is shaped largely by the strong congressional policy encouraging the resolution of labor disputes through arbitration procedures selected by the parties." *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Loc. 890L*, 656 F.3d 368, 371 (6th Cir. 2011). Courts "'afford great deference to the arbitrator's decision,' because the

underlying 'question of contract interpretation [is] for the arbitrator.'" *Id.* (citations omitted).

"Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather

than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they

have agreed to accept." *Mich. Fam. Res., Inc. v. Serv. Emp. Int'l Union Loc. 517M*, 475 F.3d 746,

752 (6th Cir. 2007) (en banc) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,

484 U.S. 29, 37–38 (1987)).   Thus, the Court examines arbitration awards using a standard that

screens for "procedural aberration[s]." *Id.* at 753.

> To determine whether an award has procedural aberrations, the Court asks three questions:
>
> Did the arbitrator act "outside his authority" by resolving a dispute not committed
> to arbitration? Did the arbitrator commit fraud, have a conflict of interest or
> otherwise act dishonestly in issuing the award? And in resolving any legal or factual
> disputes in the case, was the arbitrator "arguably construing or applying the
> contract"?

*Id.*   The test articulated by the Sixth Circuit "permit[s] only the most egregious awards to be

vacated." *Id.*   However, this standard "respects the parties' decision to hire their own judge to

resolve their disputes[.] *Id.*   Due to this deference, the Court's review of an arbitrator's decision

is "one of the narrowest standards of judicial review in all of American Jurisprudence." *Lattimer-*

*Stevens v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990).

### C.  The Remedy Award

The Union argues that the arbitrator satisfied the standard set forth in *Michigan Family*

*Resources* when formulating the Remedy Award.   [DE 16-1 at 664–65].   It contends that the

arbitrator resolved the dispute submitted to him and arguably construed the parties' agreement in

the Remedy Award.   [*Id.* at 665, 668].   In response, CDRT asserts that the Remedy Award must

be vacated because the arbitrator violated the doctrine of *functus officio*, exceeded the scope of his

jurisdiction, and awarded impermissible punitive damages.   [DE 25 at 778–79].   Neither party

argues that the arbitrator committed fraud or had a conflict of interest.  [DE 15-1; DE 16-1].

Therefore, the Court will focus on the first and third questions required by *Michigan Family*

*Resources*, 475 F.3d at 753.

### 1.  *Scope of the Arbitrator's Authority*

First, the Court must consider whether the arbitrator acted "outside his authority." *Mich.*

*Fam. Res., Inc.*, 475 F.3d at 753.  The Union contends that the arbitrator was within his authority

enforced the original award.  [DE 16-1 at 666].  CDRT argues that the arbitrator acted outside the

scope of his authority and asserts that the Union misconstrues the case law.  [DE 25 at 780].

"An arbitrator's authority is not strictly confined to the 'technical limits of the

submission.'" *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 155 F.3d 767,

772 (6th Cir. 1998) (quoting *Champion Int'l. Corp. v. United Paperworkers Int'l. Union*, 779 F.2d

328, 335 (6th Cir. 1985)).  "[T]he extraordinary deference given to an arbitrator's ultimate decision

on the merits applies equally to an arbitrator's threshold decision that the parties have indeed

submitted a particular issue for arbitration." *Champion Int'l. Corp.*, 779 F.2d at 335.  For a court

to overturn an arbitration award, it must be "clear" that the arbitrator "exceeded the scope of the

submission."  *Id.*; *see also Int'l Chem. Workers Union Loc. No. 566 v. Mobay Chem. Corp.*, 755

F.2d 1107, 1110 (4th Cir. 1985) (holding that the scope of issues submitted for arbitration may be

broadened by the conduct of the parties during an arbitration).

Here, the scope of the arbitrator's authority was set forth in the parties' Settlement

Agreement:

> The parties agree to arbitrate the sole issue of the calculation of backpay, as that
> remedy is referred to and defined in the July 24, 2019 Opinion and Award of
> Arbitrator Mark C. Travis.  Said arbitration shall be held before Arbitrator Travis
> and shall be scheduled as soon as reasonably possible.

[DE 15-5 at 256].  The "issue of the calculation of backpay" references a damages provision in the Merits Award.  [*Id.*].  The term at issue in the Merits Award explains that "[b]argaining unit members who were not offered the opportunity to perform work assigned to employees of C & W Facility Services, shall be made whole for all lost wages and benefits sustained."  [DE 15-4 at 251].  Neither the Merits Award nor the Settlement Agreement define "backpay."  [DE 15-4; DE 15-5].  The Merits Award does not use the term "backpay" at any point in the 13-page, reasoned decision.  [DE 15-4].  Instead, the Merits Award simply states that the bargaining unit members "shall be made whole" but does not define this remedy in detail.  [*Id.* at 251].

The arbitrator ultimately determined that CDRT's backpay obligation, based on the Merits Award, would be calculated by multiplying the hours worked by contract laborers at Derby City Gaming by the applicable rate in the CBA.  [DE 15-3 at 236].  This amount would be paid to the Union.  [*Id.*].  The arbitrator was not "strictly confined to the technical limits" of the Settlement Agreement when reviewing and interpreting the Merits Award.  *Int'l Ass'n of Machinists & Aerospace Workers*, 155 F.3d at 772.  The Court must give "extraordinary deference" to the arbitrator's decision that calculating backpay in this way was within the scope of his jurisdiction.  *Champion Int'l. Corp.*, 779 F.2d at 335.  Although the Settlement Agreement purports to limit the arbitrator's jurisdiction to the "issue of the calculation of backpay," this phrase is vague and leaves room for the arbitrator's interpretation.  [DE 15-5 at 256].  The phrase includes no defined terms, paragraph numbers, or proposed formulas.  [*Id.*].  The Merits Award does not include the term "backpay."  [DE 15-4].  Based on the ambiguity in the Settlement Agreement and the Merits Award, it is not clear that the arbitrator exceeded the scope of the issues submitted to him by the parties.  *Champion Int'l. Corp.*, 779 F.2d at 335.

CDRT contends that the arbitrator exceeded the scope of his authority because the Merits Award defines "backpay" as "the amount necessary to make bargaining unit members who were not offered the work assigned to C&W Facilities Services employees whole for any lost wages and benefits." [DE 15-1 at 215]. In support of this argument, CDRT filed a notice of supplemental authority citing *Advantage Veterans Services, LLC v. United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International, Local 7898*, 70 F.4th 751 (4th Cir. 2023). [DE 34]. In *Advantage Veterans*—a non-binding case recently decided by the Fourth Circuit—the applicable agreement required the arbitrator to make a "reasonable basis determination" in her decision, but the arbitrator failed to do so. *See* 70 F.4th at 756. The arbitrator's failure to make a "reasonable basis determination" led the Fourth Circuit to vacate the arbitration award because it did not draw its essence from the underlying contract. *Id.* at 758.

As the Court has discussed, however, the Merits Award does not define "backpay." [DE 15-4]. CDRT's proposed definition of "backpay" is simply an interpretation of the Merits Award. [DE 15-1 at 215]. Unlike *Advantage Veterans*, the arbitrator's interpretation of "backpay" could be drawn from the Merits Award, Settlement Agreement, and CBA. *See* 70 F.4th at 758. The Court accepts the Union's contention that CDRT simply disagrees with the arbitrator's interpretation of the Merits Award. [DE 26 at 796]. But "a challenge to the arbitrator's interpretation . . . is not a determining factor as to the question of whether the arbitrator exceeded his authority." *Americold Logistics, LLC v. Loc. 17A United Food & Com. Workers, AFL-CIO*, No. 5:12CV749, 2013 WL 351159 , at *3 (N.D. Ohio Jan. 29, 2013). Accordingly, the Court finds that the arbitrator did not exceed his authority when fashioning the Remedy Award.

9

### 2. *Arguably Construing the Parties' Agreement*

Next, the Court must consider whether the arbitrator was "arguably construing or applying the contract." *Mich. Fam. Res., Inc.*, 475 F.3d at 753.  The Union argues that the Remedy Award must be enforced because the arbitrator was construing the Merits Award and the CBA.  [DE 16-1 at 668–70].  In response, CDRT contends that the Settlement Agreement and the doctrine of *functus officio* prohibit the arbitrator from construing the Settlement Agreement and Merits Award in this way.  [DE 25 at 782–83].

"'[So] long as the arbitrator is even arguably construing or applying the contract,' [the Court] will uphold the decision." *Zeon Chems., L.P. v. United Food & Com. Workers, Loc. 72D*, 949 F.3d 980, 983 (6th Cir. 2020) (quoting *Misco*, 484 U.S. at 38).  An arbitrator arguably construes the contract when the award bears all the "hallmarks of interpretation." *Econ. Linen & Towel Serv., Inc. v. Int'l Brotherhood of Teamsters, Teamsters Loc. Union 637*, 917 F.3d 512, 514 (quoting *Mich. Fam. Res.*, 475 F.3d at 754).  An award bears the "hallmarks of interpretation" when the arbitrator "refers to, quotes from and analyzes the pertinent provisions of the agreement, and at no point does [the arbitrator] say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract." *Mich. Fam. Res.*, 475 F.3d at 754. The Court will enforce an award where the arbitrator's interpretation is plausible, even if the "merits analysis has some eyesores." *Zeon Chems.*, 949 F.3d at 983.  The arbitrator fails to construe the contract when "the arbitrator's decision on the merits was so untethered from the agreement that it casts doubt on whether he was engaged in interpretation, as opposed to the implementation of his 'own brand of industrial justice.'" *Titan Tire Corp. of Bryan*, 656 F.3d at 374 (quoting *Mich. Fam. Res.*, 475 F.3d at 754).

10

But "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Equitable Res., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC; Loc. 8-512*, 621 F.3d 538, 545 (6th Cir. 2010) (quoting *Misco*, 484 U.S. at 38). "[A]rbitrators have long had considerable 'flexibility' when 'formulating remedies.'" *Econ. Linen*, 917 F.3d at 515 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). "That's because '[t]he draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.'" *Id.* (quoting *Enter. Wheel*, 363 U.S. at 597).

In *Totes Isotoner Corp. v. International Chimerical Workers Union Council/UFCW Loc. 664C*, 532 F.3d 405 (6th Cir. 2008), the Sixth Circuit examined a similar instance where an arbitrator issued an award interpreting a prior arbitration award and a corresponding collective bargaining agreement. The Sixth Circuit held that "a supplemental award 'arguably construes' a collective bargaining agreement where the supplemental award seeks to clarify or enforce an original award that interpreted the relevant agreement." *Id.* at 413 (citing *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Loc. 24*, 357 F.3d 546 (6th Cir. 2004) and *Marcucilli v. Am. Airlines*, No. 04–40244, 2007 WL 1219042 (E.D. Mich. 2007)). Therefore, it was insignificant whether the "contract at issue" was the collective bargaining agreement or the initial award so long as they both reference the collective bargaining agreement that gave rise to the grievance. *Id.*

Here, like *Totes Isotoner*, it is insignificant whether the contract the arbitrator must arguably construe is the CBA or the Merits Award because they both reference the same document—the CBA. *See* 532 F.3d 413. The Settlement Agreement required the arbitrator to

11

clarify the remedy referred to in the Merits Award. [DE 15-5 at 256]. The Merits Award provides very few constraints on the precise remedy, noting only that bargaining unit members "shall be made whole for all lost wages and benefits sustained." [DE 15-4 at 251]. Moreover, this Court has held that the CBA "places no constraints on the types of remedy the arbitrator may order," which "leaves room for the arbitrator to fashion a remedy." *Churchill Downs Racetrack*, 2020 WL 6946574, at *5.

The Remedy Award bears many of the "hallmarks of interpretation." *Econ. Linen*, 917 F.3d at 514. The arbitrator provided a thorough procedural history of the parties' dispute and quoted the relevant sections of the CBA, Merits Award, and Settlement Agreement. [DE 15-3 at 225–27]. He then discussed the parties' positions and their supporting arguments. [*Id.* at 227–31]. The arbitrator next engaged in a detailed analysis of the relevant provisions while accepting and rejecting the parties' arguments. [*Id.* at 231–36]. The arbitrator cited authority for his positions and distinguished cases cited by CDRT. [*Id.*]. Although the arbitrator ultimately agreed with the Union, the arbitrator rejected the Union's request for damages related to reputational loss. [*Id.* at 235–36]. There is no indication that the arbitrator "was doing anything other than trying to reach a good-faith interpretation of the contract." *Mich. Fam. Res.*, 475 F.3d at 754; *Zeon Chems.*, 949 F.3d at 984 (holding that an arbitrator's findings against the prevailing party suggests the outcome was well-reasoned and considered both sides). Based on the foregoing, the Court finds that the arbitrator arguably construed the Merits Award and CBA when formulating the Remedy Award. *See Zeon Chems.*, 949 F.3d at 983.

Additionally, the Court has no authority to disagree with the arbitrator's damages calculation in the Remedy Award, see *Equitable Res.*, 621 F.3d at 545, because the underlying documents gave the arbitrator discretion when fashioning damages, see *Churchill Downs*

*Racetrack*, 2020 WL 6946574, at \*5. The Settlement Agreement did little to restrain the arbitrator's ability to create an appropriate remedy. [DE 15-5 at 256]. This is consistent with the Sixth Circuit's finding that arbitrators have considerable flexibility to formulate remedies. *See Econ. Linen*, 917 F.3d at 515. The arbitrator simply drafted a remedy to meet this "particular contingency" identified by the parties in the Settlement Agreement. *Enter. Wheel*, 363 U.S. at 597.

### 3. Functus Officio

CDRT contends that the doctrine of *functus officio* sets forth an independent ground that requires the Court to vacate the Remedy Award. [DE 15-1 at 212]. It argues that the arbitrator used the Remedy Award to change who would receive money damages and the measure of money damages. [*Id.* at 213]. In response, the Union contends that (1) CDRT waived its *functus officio* argument, (2) applying the doctrine would undermine federal labor policies, and (3) the doctrine is inapplicable. [DE 26 at 799–802].

The *functus officio* doctrine "prevents arbitrators from revisiting a final award after the final award has been issued." *WMA Sec. Inc. v. Wynn*, 32 F. App'x 726, 729 (6th Cir. 2002). The policy promoted by *functus officio* "is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion." *Green v. Ameritech Corp.*, 200 F.3d 967, 976–77 (6th Cir. 2000) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967)). However, the doctrine has several exceptions. *See id.* An arbitrator may revisit an award "to clarify an ambiguous award or . . . to address an issue submitted to him but not resolved by the award." *Indus. Mut. Ass'n Inc. v. Amalgamated Workers, Loc. No. 383*, 725 F.2d 406, 412 n. 3 (6th Cir.

1984) (citations omitted).  "Where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify."  *Green*, 200 F.3d at 977 (quoting *La Vale Plaza*, 378 F.2d at 572).  The doctrine of *functus officio* is most often applied when an arbitrator issues "a second award fundamentally inconsistent with the first award."  *Courier-Citizen Co. v. Bos. Electrotypers Union No. 11, Int'l Printing & Graphic Commc'ns Union of N. Am.*, 702 F.2d 273, 279 (1st Cir. 1983).

Here, the parties agreed to have the arbitrator revisit the Merits Award as part of the Settlement Agreement.  [DE 15-5 at 256].  They specifically asked the arbitrator to calculate a damages remedy that was referred to in the Merits Award.  [*Id.*].  The Merits Award merely states that "[b]argaining unit members . . . shall be made whole for all lost wages and benefits sustained."  [DE 15-4 at 251].  The Merits Award does not specify how CDRT must "make whole" bargaining unit members, what formula must be used to calculate damages, or who the damages must be paid to.  [*Id.*].  Due to the language of the Merits Award, the arbitrator was permitted to clarify the "seemingly complete award" because "doubts" remained about the final calculation of damages.  *See Green*, 200 F.3d at 977.  There is also little risk of undermining the policies promoted by the doctrine of *functus officio* because the parties voluntarily submitted this issue to the arbitrator.  *See id.* at 976–77.

Additionally, there is no indication that the Merits Award and Remedy Award are fundamentally inconsistent.  *See Courier-Citizen*, 702 F.2d at 279.  The Remedy Award calculated backpay based on the hours worked by contract laborers and award those damages to the Union.  [DE 15-3 at 236].  The Merits Award did not specify certain bargaining unit members that must receive payment or preclude the Union from receiving damages.  [DE 15-4 at 251].  The arbitrator could determine that the damages calculation in the Remedy Award would "make whole"

bargaining unit members.  [*Id.*].  The Court finds that the Merits Award and Remedy Award are not "fundamentally inconsistent."  *Courier-Citizen*, 702 F.2d at 279.  Therefore, the doctrine of *functus officio* does not require the Court to vacate the Remedy Award.[1]

### 4.  Punitive Damages

CDRT argues that the Remedy Award should be vacated because the arbitrator improperly awarded punitive damages.  [DE 15-1 at 215].  In response, the Union contends that the arbitrator appropriately awarded compensatory damages.  [DE 26 at 797].

Punitive damages "are generally not available for breach of contract."  *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1571 (2022).  However, a damages award "related to arguably proper compensatory damages" must be upheld even where the award is "perhaps unusual and even bizarre."  *Loc. 120, Int'l Molders & Allied Workers Union, AFL-CIO v. Brooks Foundry, Inc.*, 892 F.2d 1283, 1288 (6th Cir. 1990).

Here, the arbitrator expressly stated that the Remedy Award was not imposing punitive damages.  [DE 15-3 at 236 ("In conclusion, an award of monetary backpay damages to the Union based on improperly subcontracted manhours as borne out by time records is appropriate and reasonably ascertainable in this case, and is otherwise *not punitive in nature*." (emphasis added))].  The damages were calculated based on the bargaining unit members' "lost opportunity" to perform work at Derby City Gaming.  [*Id.* at 231].  The arbitrator calculated this lost opportunity by multiplying the applicable rates in the CBA by the hours worked by contract laborers.  [*Id.* at 236].  The Court finds that this calculation is "related to arguably proper compensatory damages."  *Brooks Foundry*, 892 F.2d at 1288.  As the Court has explained, it has no authority to disagree

---

[1] The Court will not address the Union's other arguments because it finds that the *functus officio* doctrine is inapplicable.

with the arbitrator's determination of remedies based on the CBA and Merits Award.  *See Equitable Res.*, 621 F.3d at 545.

Based on the foregoing, the Union has demonstrated that the Remedy Award satisfies the standard for arbitration awards articulated in *Michigan Family Resources*, and CDRT has failed to articulate an independent ground on which the Court must vacate the Remedy Award.  Therefore, the Union's Motion for Summary Judgment [DE 16] is **GRANTED**.  CDRT's Motion for Summary Judgment [DE 15] is **DENIED**.

### D.  Attorneys' Fees

The Union contends that they should be awarded attorneys' fees because CDRT acted in bad faith.  [DE 16-1 at 678].  In response, CDRT argues that the Union has not satisfied its burden for attorneys' fees.  [DE 25 at 790].

"[F]ee awards are appropriate in 'egregious cases of misconduct,'" not where a party has simply requested judicial review of an arbitration award.  *Zeon Chems.*, 949 F.3d at 986 (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)) (finding attorney fees were not warranted when reviewing an arbitration award where the union made no specific showing of egregious misconduct); *compare Monroe Auto Equip. Co. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW), Monroe Auto Equip. Co., Unit of Loc. 878*, 981 F.2d 261, 270 (6th Cir. 1992) (finding egregious conduct didn't exist where a party argued that an arbitration award should be vacated under the court's limited scope of review), *with Aircraft Braking Sys. Corp. v. Loc. 856, Int'l Union, United Auto., Aerospace & Agric. Implement Workers, UAW*, 97 F.3d 155, 163 (6th Cir. 1996) (finding egregious conduct existed when a party raised a legal argument rejected by the court in a related proceeding about the same dispute).

Here, the Union argues that it is entitled to attorneys' fees because CDRT makes "bad faith arguments that are foreclosed by precedent and the parties' written agreements." [DE 16-1 at 679]. This is no more than a dispute between the parties, and the Union offers no evidence of egregious misconduct. [*Id.*]. Therefore, no fee award is warranted. *See Zeon Chems.*, 949 F.3d at 986. The Union's request for attorneys' fees in its Motion for Summary Judgment [DE 16] is **DENIED**.

### III.     CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.      CDRT's Motion for Summary Judgment [DE 15] is **DENIED**; and

2.      The Union's Motion for Summary Judgment [DE 16] is **GRANTED IN PART as to summary judgment and DENIED IN PART as to its request for attorney's fees**.

Rebecca Grady Jennings, District Judge
United States District Court

August 16, 2023

cc:     Counsel of record

17